**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

CAROLYN J. CURRY,

      Petitioner,
                                    CASE NO. 2:11-15414
                                      HONORABLE PAUL D. BORMAN
v.                                      UNITED STATES DISTRICT JUDGE

CLARICE STOVALL,

      Respondent.

_____/

**OPINION AND ORDER DENYING (1) THE PETITION FOR WRIT OF HABEAS**
**CORPUS; (2) A CERTIFICATE OF APPEALABILITY, AND (3) LEAVE TO APPEAL**
**IN FORMA PAUPERIS**

      Carolyn J. Curry, ("petitioner"), confined at the Huron Valley Women's Correctional

Facility in Ypsilanti, Michigan, seeks the issuance of a writ of habeas corpus pursuant to 28

U.S.C. § 2254. In her *pro se* application, petitioner challenges her conviction for first-degree

premeditated murder, Mich. Comp. Laws § 750.316(1)(a), conspiracy to commit first-degree

premeditated murder, Mich. Comp. Laws §§ 750.157a; 750.316(1)(a), carrying a concealed

weapon, Mich. Comp. Laws § 750.227, possession of a firearm in the commission of a felony,

Mich. Comp. Laws § 750.227b, and being a second habitual felony offender, Mich. Comp. Laws

§ 769.10. For the reasons that follow, the application for a writ of habeas corpus is DENIED

WITH PREJUDICE.

**I. BACKGROUND**

      Petitioner was convicted of the above offenses following a jury trial in the Saginaw

County Circuit Court. This Court recites verbatim the relevant facts regarding petitioner's

conviction from the Michigan Court of Appeals' opinion affirming her conviction, which are

presumed correct on habeas review pursuant to 28 U.S.C. § 2254(e)(1). *See Wagner v. Smith*, 581

F.3d 410, 413 (6th Cir. 2009):

> During a gathering at a motorcycle club on February 19, 2001, the decedent, Howard
> Reedy, cut defendant's son, Elmer Curry following an argument. Thereafter, various
> witnesses heard defendant threaten to kill Reedy. Moreover, witnesses testified that
> defendant was attempting to learn where Reedy lived and that she was carrying a
> firearm.
>
> Shawn Carter, Eddie Ray Harry, and Adam Williams testified that they were having
> a four-way telephone conversation with Reedy later that evening. After Carter hung
> up, Reedy said that someone was at the door. Harry and Williams testified that they
> then heard Reedy telling "Redbone" to back up into the light. "Redbone" was
> defendant's nickname. Harry said he then heard two shots, and that Reedy came
> back and said defendant "shot me." According to Williams, Reedy simply said that
> he had been shot.
>
> Reedy suffered a gunshot wound to his lower left abdomen. The bullet went from
> front to back, left to right, at a slightly downward angle. It was shot at very close
> range through a wooden door. Because the storm door had no damage, the shooter
> would have been between the storm door and the wooden door. A recovered casing
> indicated that the bullet came from a semiautomatic firearm.
>
> There was evidence that on the evening in question, defendant was repeatedly seen
> with Dawn Parham. Originally, Parham and defendant were tried jointly. However,
> a mistrial was granted with respect to defendant. Thereafter, Parham entered a plea
> of no contest to a charge of voluntary manslaughter. Defendant was later convicted
> of all the charges against her. She now appeals.

*People v. Curry*, No. 292730, pp. 1-2 (Mich.Ct.App. April 14, 2011).

Petitioner's conviction was affirmed on appeal. *Id., lv. den.* 490 Mich. 874, 803 N.W.2d

341 (2011).[1]

---

[1] Petitioner's first three appellate attorneys failed to perfect petitioner's appeal of right following her
conviction in 2002. This Court granted petitioner a conditional writ of habeas corpus based upon appellate counsels'
ineffectiveness in failing to perfect petitioner's appeal of right and ordered that the Michigan Court of Appeals
reinstate petitioner's appeal of right and appoint appellate counsel to assist petitioner with her appeal. *See Curry v.
Stovall*, No. 07–CV–14695, 2009 WL 1393397 (E.D. Mich. May 18, 2009). The Michigan Court of Appeals
subsequently reinstated petitioner's appeal of right in compliance with the Court's order.

Petitioner seeks a writ of habeas corpus on the following grounds:

I. Because the egregious misconduct of the prosecutor resulted in the declaration of a mistrial, Petitioner's second trial violated the Double Jeopardy Clause of the Fifth Amendment.

II. Petitioner was deprived of the effective assistance of counsel where defense counsel failed to object to her absence during critical phases of the trial.

III. Petitioner was deprived of the effective assistance of defense counsel where counsel failed to investigate the alleged conference call, failed to investigate various alibi witnesses, and failed to present additional favorable evidence of important facts.

## II. STANDARD OF REVIEW

28 U.S.C. § 2254(d), as amended by The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), imposes the following standard of review for habeas cases:

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–

(1)     resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
(2)     resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

A decision of a state court is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). An "unreasonable application" occurs when "a state court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." *Id.* at 409. A federal habeas court may not "issue the

3

writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 410-11.

The Supreme Court has explained that "[A] federal court's collateral review of a state-court decision must be consistent with the respect due state courts in our federal system." *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003). The "AEDPA thus imposes a 'highly deferential standard for evaluating state-court rulings,'and 'demands that state-court decisions be given the benefit of the doubt.'" *Renico v. Lett*, 130 S. Ct. 1855, 1862 (2010)((quoting *Lindh v. Murphy*, 521 U.S. 320, 333, n. 7 (1997); *Woodford v. Viscotti*, 537 U.S. 19, 24 (2002) (*per curiam*)). "[A] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 131 S. Ct. 770, 786 (2011)(citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). The Supreme Court has emphasized "that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* (citing *Lockyer v. Andrade,* 538 U.S. 63, 75 (2003). Furthermore, pursuant to § 2254(d), "a habeas court must determine what arguments or theories supported or...could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision" of the Supreme Court. *Id.*

"[I]f this standard is difficult to meet, that is because it was meant to be." *Harrington,* 131 S. Ct. at 786. Although 28 U.S.C. § 2254(d), as amended by the AEDPA, does not completely bar federal courts from relitigating claims that have previously been rejected in the

4

state courts, it preserves the authority for a federal court to grant habeas relief only "in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with" the Supreme Court's precedents. *Id.* Indeed, "Section 2254(d) reflects the view that habeas corpus is a 'guard against extreme malfunctions in the state criminal justice systems,' not a substitute for ordinary error correction through appeal." *Id.* (citing *Jackson v. Virginia,* 443 U.S. 307, 332, n. 5 (1979))(Stevens, J., concurring in judgment)). Thus, a "readiness to attribute error [to a state court] is inconsistent with the presumption that state courts know and follow the law." *Woodford,* 537 U.S. at 24. Therefore, in order to obtain habeas relief in federal court, a state prisoner is required to show that the state court's rejection of his claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington,* 131 S. Ct. at 786-87. Finally, in reviewing petitioner's claims, this Court must remember that under the federal constitution, petitioner was "entitled to a fair trial but not a perfect one." *Lutwak v. United States,* 344 U.S. 604, 619 (1953).

## III. DISCUSSION

### A. Claim # 1. The Double Jeopardy claim.

Petitioner first contends that the prosecutor at her first trial goaded her defense counsel into requesting a mistrial, thus, her retrial was barred by the Fifth Amendment's Double Jeopardy Clause.

Respondent contends that petitioner's claim is procedurally defaulted because petitioner failed to contemporaneously object to the retrial on Double Jeopardy grounds, and as a result, the Michigan Court of Appeals reviewed the claim for plain error only. *Curry,* Slip. Op. at p. 2.

5

When the state courts clearly and expressly rely on a valid state procedural bar, federal habeas review is also barred unless petitioner can demonstrate "cause" for the default and actual prejudice as a result of the alleged constitutional violation, or can demonstrate that failure to consider the claim will result in a "fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. 722, 750-51 (1991). If petitioner fails to show cause for his procedural default, it is unnecessary for the court to reach the prejudice issue. *Smith v. Murray*, 477 U.S. 527, 533 (1986). However, in an extraordinary case, where a constitutional error has probably resulted in the conviction of one who is actually innocent, a federal court may consider the constitutional claims presented even in the absence of a showing of cause for procedural default. *Murray v. Carrier*, 477 U.S. 478, 479-80 (1986). However, to be credible, such a claim of innocence requires a petitioner to support the allegations of constitutional error with new reliable evidence that was not presented at trial. *Schlup v. Delo*, 513 U.S. 298, 324 (1995).

The Michigan Court of Appeals clearly indicated that by failing to object, petitioner had not preserved her Double Jeopardy claim. The fact that the Michigan Court of Appeals engaged in plain error review of petitioner's first claim does not constitute a waiver of the state procedural default. *Seymour v. Walker,* 224 F.3d 542, 557 (6th Cir. 2000). Instead, this Court should view the Michigan Court of Appeals' review of petitioner's claim for plain error as enforcement of the procedural default. *Hinkle v. Randle,* 271 F.3d 239, 244 (6th Cir. 2001). In addition, the mere fact that the Michigan Court of Appeals also discussed the merits of petitioner's Double Jeopardy claim does not mean that this claim was not procedurally defaulted. A federal court need not reach the merits of a habeas petition where the last state court opinion clearly and expressly rested upon procedural default as an alternative ground, even

6

though it also expressed views on the merits. *McBee v. Abramajtys*, 929 F.2d 264, 267 (6th Cir. 1991). Petitioner's first claim is procedurally defaulted.

In the present case, petitioner has offered no reasons for her failure to preserve her Double Jeopardy claim. Although ineffective assistance of counsel may constitute cause to excuse a procedural default, that claim itself must be exhausted in the state courts. *See Edwards v. Carpenter*, 529 U.S. 446, 451 (2000). Although petitioner raised several ineffective assistance of counsel claims on her direct appeal, she never raised a claim that trial counsel was ineffective for failing to object to petitioner's retrial on Double Jeopardy grounds. Because petitioner never raised in the Michigan courts a specific claim about trial counsel's failure to object to the retrial on this basis, any alleged ineffectiveness of counsel cannot constitute cause to excuse petitioner's default with respect to her first claim. *See Wolfe v. Bock*, 412 F. Supp. 2d 657, 684 (E.D. Mich. 2006). Because petitioner has not demonstrated any cause for her procedural default, it is unnecessary to reach the prejudice issue regarding her first claim. *Smith*, 477 U.S. at 533.

Additionally, petitioner has not presented any new reliable evidence to support any assertion of innocence which would allow this Court to consider her first claim as a ground for a writ of habeas corpus in spite of the procedural default. Although petitioner claims that she has an alibi to the crime, for the reasons that will be stated by the Court in greater detail when discussing petitioner's ineffective assistance of counsel claim, *infra,* these purported alibi witnesses were unable to testify that petitioner was with them for the entire time frame in which the victim was shot. Because there was a window of opportunity for petitioner to have committed this murder, her purported alibi witnesses are insufficiently reliable evidence to

7

establish petitioner's actual innocence, so as to excuse her default. *See e.g. Turner v. Romanowski,* 409 F. App'x. 922, 929-30 (6th Cir. 2011); *See also Reeves v. Fortner,* ---- F. App'x. -----, 2012 WL 3126760, pp. 4-5 (6th Cir. August 2, 2012)(alibi witnesses' proposed testimony did not establish petitioner's actual innocence to excuse default, when proposed testimony did not preclude the petitioner from committing the crime). Because petitioner has not presented any new reliable evidence that she is innocent of these crimes, a miscarriage of justice will not occur if the Court declined to review petitioner's procedurally defaulted claim on the merits. *See Johnson v. Smith*, 219 F. Supp. 2d 871, 882 (E.D. Mich. 2002).

Finally, assuming that petitioner had established cause for the default of her first claim, she would be unable to satisfy the prejudice prong of the exception to the procedural default rule, because her claim would not entitle her to relief. The cause and prejudice exception is conjunctive, requiring proof of both cause and prejudice. *See Matthews v. Ishee,* 486 F.3d 883, 891 (6th Cir. 2007). For the reasons stated by the Michigan Court of Appeals in rejecting petitioner's first claim on direct appeal, *See Curry,* Slip. Op. at pp. 2-3, and by the Assistant Michigan Attorney General in her answer to the petition for writ of habeas corpus, petitioner has failed to show that her procedurally defaulted claim has any merit. In particular, the reasons justifying the denial of petitioner's procedurally defaulted claim were "ably articulated by the" Michigan Court of Appeals in rejecting petitioner's Double Jeopardy claim, therefore, "the issuance of a full written opinion" by this Court regarding this claim "would be duplicative and serve no useful, jurisprudential purpose." *See e.g. Bason v. Yukins,* 328 F. App'x. 323, 324 (6th Cir. 2009). Petitioner is not entitled to habeas relief on her procedurally defaulted claim.

8

**B. Claims # 2 and # 3.  The ineffective assistance of counsel claims.**

In her second and third claims, petitioner alleges that she was denied the effective assistance of trial counsel.

To show that she was denied the effective assistance of counsel under federal constitutional standards, a defendant must satisfy a two prong test.  First, the defendant must demonstrate that, considering all of the circumstances, counsel's performance was so deficient that the attorney was not functioning as the "counsel" guaranteed by the Sixth Amendment. *Strickland v. Washington*, 466 U.S. 668, 687 (1984).  In so doing, the defendant must overcome a strong presumption that counsel's behavior lies within the wide range of reasonable professional assistance. *Id.*  In other words, petitioner must overcome the presumption that, under the circumstances, the challenged action might be sound trial strategy. *Strickland,* 466 U.S. at 689.  Second, the defendant must show that such performance prejudiced his defense. *Id.* To demonstrate prejudice, the defendant must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland,* 466 U.S. at 694.  "*Strickland*'s test for prejudice is a demanding one. 'The likelihood of a different result must be substantial, not just conceivable.'" *Storey v. Vasbinder*, 657 F.3d 372, 379 (6th Cir. 2011)(quoting *Harrington*, 131 S. Ct. at 792).  The Supreme Court's holding in *Strickland* places the burden on the defendant who raises a claim of ineffective assistance of counsel, and not the state, to show a reasonable probability that the result of the proceeding would have been different, but for counsel's allegedly deficient performance. *See Wong v. Belmontes*, 130 S. Ct. 383, 390-91 (2009).

More importantly, on habeas review, "the question 'is not whether a federal court

believes the state court's determination' under the *Strickland* standard 'was incorrect but

whether that determination was unreasonable-a substantially higher threshold.'" *Knowles v.*

*Mirzayance*, 556 U.S. 111, 123 (2009)(quoting *Schriro v. Landrigan*, 550 U.S. 465, 473

(2007)). "The pivotal question is whether the state court's application of the *Strickland* standard

was unreasonable. This is different from asking whether defense counsel's performance fell

below *Strickland's* standard." *Harrington v. Richter*, 131 S. Ct. at 785. Indeed, "because the

*Strickland* standard is a general standard, a state court has even more latitude to reasonably

determine that a defendant has not satisfied that standard." *Knowles,* 556 U.S. at 123 (citing

*Yarborough v. Alvarado*, 541 U.S. at 664). Pursuant to § 2254(d)(1) standard, a "doubly

deferential judicial review" applies to a *Strickland* claim brought by a habeas petitioner. *Id.*

This means that on habeas review of a state court conviction, "[A] state court must be granted a

deference and latitude that are not in operation when the case involves review under the

*Strickland* standard itself."*Harrington*, 131 S. Ct. at 785. "Surmounting *Strickland's* high bar is

never an easy task." *Id.* at 788 (quoting *Padilla v. Kentucky*, 130 S. Ct. 1473, 1485 (2010)).

Because of this doubly deferential standard, the Supreme Court has indicated that:

> Federal habeas courts must guard against the danger of equating unreasonableness
> under *Strickland* with unreasonableness under § 2254(d). When § 2254(d) applies,
> the question is not whether counsel' s actions were reasonable. The question is
> whether there is any reasonable argument that counsel satisfied *Strickland's*
> deferential standard.

*Harrington v. Richter*, 131 S. Ct. at 788.

In addition, a reviewing court must not merely give defense counsel the benefit of the

doubt, but must also affirmatively entertain the range of possible reasons that counsel may have

had for proceeding as he or she did. *Cullen v. Pinholster,* 131 S. Ct. 1388, 1407 (2011).

10

Finally, this Court is aware that "[R]eliance on 'the harsh light of hindsight' to cast doubt on a trial that took place" over ten years ago "is precisely what *Strickland* and AEDPA seek to prevent." *Harrington v. Richter*, 131 S. Ct. at 789.

In her second claim, petitioner argues that trial counsel was ineffective for failing to object to petitioner's absence from critical stages of the proceedings against her.

Petitioner first claims that she should have been present during an exchange between the trial court and the jury, which occurred on March 29, 2002, when both the prosecutor and defense counsel were present and on the record. The trial judge told the jury that it was the end of the day and that their deliberations could stop. The judge also asked the jurors if they would prefer to resume their deliberations on the next Monday or Tuesday, following the Easter weekend. The jurors replied that they wished to resume deliberating on Tuesday. The judge excused the jurors for the weekend and told them that their questions regarding the witnesses' testimonies would be responded to when they returned for deliberations. After the jurors had been excused, the trial judge discussed some of the jury's questions with the prosecutor and defense counsel. The jury had asked for a map of the city of Saginaw, the victim's address, certain witnesses' addresses, the address of the motorcycle club, as well as times related to when the police officers were at the hospital, and other factual questions from the witnesses' testimonies. Defense counsel indicated that some of the answers to the questions "are in the testimony." The judge agreed. The prosecutor and defense counsel agreed to meet with the judge the following Monday to discuss a stipulation to answers to certain jury questions. (Tr. 3/29/2002, pp. 74-79).

On April 2, 2002, the jury reconvened, at which time the judge provided the transcripts

11

of several witnesses.  Regarding the times and addresses the jury inquired about, the prosecutor and defense counsel stipulated to the factual accuracy of the answers and the judge read the information to the jury. (Tr. 4/02/2002, pp. 3-5).

A defendant has a constitutional right to "be present at any stage of the criminal proceeding that is critical to its outcome if his presence would contribute to the fairness of the procedure." *Kentucky v. Stincer,* 482 U.S. 730, 745 (1987).  This right, however, "is not absolute, but exists only when 'his presence has a relation, reasonably substantial, to the fullness of his opportunity to defend against the charge.'" *U.S. v. Henderson*, 626 F.3d 326, 343 (6th Cir. 2010)(quoting *United States v. Brika*, 416 F.3d 514, 526 (6th Cir.2005)(quoting *Kentucky v. Stincer*, 482 U.S. at 745).  "In other words, the defendant's presence is not guaranteed when it would be 'useless,' but only 'to the extent that a fair and just hearing would be thwarted by his absence.'" *Id.* (quoting *Brika,* 416 F.3d at 526).  Indeed, the U.S. Constitution "does not require the defendant to be present when his 'presence would be useless, or the benefit but a shadow.'" *Cathron v. Jones,* 190 F. Supp. 2d 990, 1001 (E.D. Mich. 2002)(quoting *Snyder v. Massachusetts,* 291 U.S. 97, 106-107 (1934); *overruled on other grds by Malloy v. Hogan,* 378 U.S. 1 (1964)).  A defendant's presence at a hearing is "largely a matter of form" when a defendant's lawyer is present at proceedings which raise largely legal issues. *Cathron,* 190 F. Supp. 2d at 1001-1002 (quoting *Fisher v. Roe,* 263 F.3d 906, 916 (9th Cir. 2001)).

In the present case, petitioner has failed to show that she was absent from any stages of the prosecution where her presence was necessary for her to defend against the charges.  With respect to the March 29, 2002 hearing, the judge initially informed the jurors that they were done with their deliberations for the day and asked them when they wished to return after the

12

Easter weekend to resume deliberations. A judge's instructions to a jury concerning when they should commence deliberations is not considered a critical stage of the trial for which a defendant's presence is required, so long as defense counsel is present. *See Henderson,* 626 F.3d at 342-43. At the March 29th hearing, the judge, the prosecutor, and defense counsel also discussed how the judge should respond to the jurors' questions. Petitioner was not denied her right to be present at a critical stage of her trial by her absence from this hearing, where the trial court judge and the attorneys simply discussed how to respond to the jury's questions and petitioner does not dispute the response that was given to the jury's questions. *See Buell v. Mitchell,* 274 F.3d 337, 363-64 (6th Cir. 2001).

With respect to the April 2, 2002 hearing, petitioner has also failed to show that she was absent from a critical stage of the prosecution. At this hearing, the judge simply provided transcripts of the testimony of the witnesses and answered some of their questions. A judge may submit exhibits to a jury outside of the defendant's presence and may likewise provide transcripts of testimony to the jury without the defendant being present. *See U.S. v. Osterbrock,* 891 F.2d 1216, 1219 (6th Cir. 1989). Likewise, although petitioner was not present when the judge answered the jury's questions, because her attorney had helped draft a response to the questions and was present when the judge answered them, petitioner has failed to show that her absence from this hearing violated her right to be present at a critical stage of the prosecution. *Cathron,* 190 F. Supp. at 1001-02.

In this case, the hearings where petitioner was not present in courtroom were not critical stages of trial proceedings, therefore, counsel was not ineffective for either waiving petitioner's presence or not objecting to her absence. See *Osterbrock*, 891 F.2d at 1219-20. Petitioner is not

entitled to relief on her second claim.

In her third claim, petitioner initially alleges that trial counsel should have introduced the caller identification record from the victim's telephone, because it did not log in the four-way call involving Shawn Carter, Eddie Ray Harry, Adam Williams, and the victim at the time of the shooting. Petitioner argues that counsel could have used this evidence to impeach the testimony of Carter, Harry, and Williams that they had been talking with the victim at the time of the shooting and that the victim had identified petitioner as his killer.

At a posttrial *Ginther* [2] hearing conducted on petitioner's ineffective assistance of counsel claims, counsel indicated that the police report noted that the victim's caller identification device had not been working properly. The report, in fact, noted that the caller identification listed the date as February 16th and the time as 6:39 p.m., which was some eighty three hours and six minutes off from the actual time. In rejecting petitioner's claim, the Michigan Court of Appeals ruled that counsel was not ineffective in failing to present evidence of the victim's caller identification, given the erroneous dates and times on the caller identification, as well as petitioner's failure to present any evidence that the caller identification had captured all of the incoming phone calls that had been made to the victim's residence. *Curry,* Slip. Op. at p. 5.

In light of the fact that the victim's caller identification device had not been working properly and in the absence of any evidence that his device had captured every incoming phone call, petitioner has failed to show that her counsel was ineffective in failing to obtain and produce the victim's caller identification log, because such evidence would not have

---

[2] *People v. Ginther*, 390 Mich. 436, 443; 212 N.W. 2d 922 (1973).

14

conclusively established that the phone call between Carter, Harry, Williams, and the victim did

not take place. Accordingly, the Michigan Court of Appeals did not unreasonably apply

*Strickland* in rejecting her ineffective assistance of counsel claim. *See Davis v. Burt*, 100 F.

App'x. 340, 346-47 (6th Cir. 2004).

Petitioner next claims that trial counsel was ineffective for failing to call several alibi

witnesses to testify that she was with her son Elmer Curry at the hospital at the time of the

victim's murder. Trial counsel testified at the *Ginther* hearing that he did not call alibi

witnesses at petitioner's retrial for several reasons. First, counsel was afraid that if he presented

an alibi defense, the prosecutor might call co-defendant Dawn Parham, who had pleaded no

contest to manslaughter, as a rebuttal witness. Secondly, counsel indicated that petitioner had

made statements to the police following her arrest that could implicate her in the crime.

Petitioner had specifically asked the police, "Hypothetically, what if it started one way and

ended in an accident?" Petitioner had also answered "No" when the police asked if she went

"over there to kill Howard [Reedy]." Petitioner's trial counsel felt that these statements could

be construed as being incriminating. Counsel was also aware that petitioner had told the police

that there was a forty five minute time frame where she and Parham were outside of the hospital

sitting in a car. Counsel believed that this forty five minute time frame could have been

explored on rebuttal by the prosecution to petitioner's detriment. Counsel had considered what

Elmer Curry, petitioner's son, had told him about his proposed testimony, but noted that Elmer

Curry had given a statement to the police that was full of false statements. Counsel believed

that Elmer Curry's credibility would be severely undermined if he called him as an alibi witness.

Defense counsel finally indicated that all of petitioner's alibi witnesses were all over the place

15

when it came to the time frames that they claimed that petitioner was with them.  In light of the fact that all of the locations in this case were within fifteen minutes of each other, counsel did not believe that these alibi witnesses would be of much help to the defense.

The Michigan Court of Appeals rejected petitioner's ineffective assistance of counsel claim, ruling that counsel's decision not to employ these alibi witnesses was sound trial strategy. *Curry,* Slip. Op. at pp. 5-6.

In the present case, the Michigan Court of Appeals reasonably rejected petitioner's claim.  Under *Strickland*, a court must presume that decisions by counsel as to whether to call or question witnesses are matters of trial strategy. *See Hutchison v. Bell*, 303 F.3d 720, 749 (6th Cir. 2002).  Here, counsel offered several tactical reasons for not presenting an alibi defense.

First, counsel feared that the prosecution would call co-defendant Dawn Parham as a rebuttal witness to testify about petitioner's involvement in the crime if he presented an alibi defense.  Counsel's decision not to present an alibi defense because he feared that it would open the door to further incriminating evidence is a reasonable decision that defeats petitioner's claim. *See In re Alcox,* 137 Cal. App.4th 657, 665-67; 40 Cal. Rptr. 3d 491, 497-98 (Cal.Ct. App. 2006).

Secondly, petitioner had made statements to the police which could be construed as placing her at the crime scene.  Petitioner's statements to the police, which could have been construed as implied admissions that she was present at the crime scene at the time of the murder, were materially inconsistent with an alibi, thus counsel was not ineffective in failing to raise an alibi defense. *See Coe v. Bell*, 161 F.3d 320, 342-343 (6th Cir. 1998)(counsel's decision to pursue insanity defense rather than an alibi defense was 'eminently reasonable,' given

16

defendant's confession).

Third, counsel indicated that he did not call petitioner's son Elmer Curry as an alibi witness because he had made false statements to the police and he did not believe that petitioner's son would be a credible witness. Petitioner's counsel was not ineffective in failing to call Elmer Curry as an alibi witness, where counsel was aware of this witness and knew exactly what he would testify to and how credible he would be as a witness, thus leading to the presumption that counsel's decision to omit his testimony was trial strategy. *See Cathron v. Jones,* 77 F. App'x 835, 841-42 (6th Cir. 2003). Moreover, in light of the fact that Elmer Curry was a family member, counsel could have reasonably concluded that he would not have been a credible alibi witness. *See Stadler v. Berghuis,* 483 F. App'x. 173, 176-77 (6th Cir. 2012).

Finally, none of the alibi witnesses could testify that petitioner was with them at the hospital for the entire time frame during which the murder was committed. Petitioner herself admitted to the police that she had been outside of the hospital with Parham for a forty five minute period. Because the victim's house was no more than fifteen minutes away from the hospital, petitioner could have committed the murder during this time period. Because there was a window of opportunity for petitioner to have committed this murder on the night in question, petitioner was not prejudiced by counsel's failure to present an alibi defense. *See e.g. Fargo v. Phillips,* 58 F. App'x. 603, 607-08 (6th Cir. 2003). Because none of petitioner's proposed witnesses could have provided an "air-tight" alibi defense, counsel was not ineffective for failing to call them to testify at trial. *See Moore v. Parker*, 425 F.3d 250, 253-54 (6th Cir. 2005).

Petitioner next contends that counsel was ineffective for failing to call Byron Coates and

17

Cynthia Diaz to testify that she was not with her co-defendant at all relevant times on the night in question. In rejecting this claim, the Michigan Court of Appeals noted that Diaz indicated that she was not sure if petitioner was with Parham on the night of the murder and Coates could only indicate that he saw Parham without petitioner within a half hour of the murder. *Curry,* Slip. Op. at p. 6.

A defense counsel has no obligation to present evidence or testimony that would not have exculpated the defendant. *See Millender v. Adams,* 376 F.3d 520, 527 (6th Cir. 2004)(internal quotation omitted). Petitioner has failed to show that Coates or Diaz could exculpate her of the crime because neither witness could conclusively establish that petitioner was not with Parham for the entire time period on the night of the murder. Moreover, as the Michigan Court of Appeals noted in rejecting petitioner's claim, calling such witnesses could have opened the door to the prosecution calling Parham as a rebuttal witness.

Petitioner next contends that trial counsel was ineffective to present evidence that may have challenged the time frame that the murder took place, either to support an alibi defense or to impeach the credibility of the witnesses concerning when the murder took place.

Petitioner initially argues that counsel was ineffective for failing to call Ann Miller and Monique McQueen to testify about the time of the murder, claiming that these witnesses would have contradicted Adam Williams' timeline of the events. The Michigan Court of Appeals rejected this claim, because Miller's testimony may have been undermined because she estimated that the police arrived at the murder scene some fifteen minutes before the their actual time of arrival and McQueen estimated the gunshot having occurred at a time when the police had already arrived at the crime scene. *Curry,* Slip. Op. at p. 6. The Michigan Court of Appeals

18

further ruled that petitioner was not prejudiced by counsel's failure to call these witnesses, in light of the overwhelming evidence against her, including testimony from a number of witnesses that petitioner had threatened to kill the victim that night and had been armed with a weapon while looking for him, as well as testimony from two witnesses who testified that the victim had identified identified petitioner as his killer during a conference call. *Id.*

Petitioner further contends that counsel was ineffective for failing to present a map and other evidence pertaining to the distances between the various locations at trial. The Michigan Court of Appeals rejected this claim, noting that all of the locations were within fifteen minutes of each other and counsel may not have wanted to draw attention to that fact. *Curry,* Slip. Op. at p. 6.

Finally, petitioner contends that evidence of the time of the 911 call should have been introduced. Given the evidence that the police responded within one or two minutes of the call, the Michigan Court of Appeals concluded that this evidence would not have been helpful. *Curry,* Slip. Op. at p. 6.

Given the overwhelming evidence of petitioner's guilt, as well as the fact that the victim's residence was no more than fifteen minutes away from all of the other relevant locations, petitioner has failed to show a reasonable probability that the result of her trial would have been different had counsel introduced evidence concerning the timeline of the crime. *Slaughter v. Epps*, 326 F. App'x. 731, 733-34 (5th Cir. 2009). Petitioner is not entitled to habeas relief on her ineffective assistance of counsel claims.

The Court will deny the petition for writ of habeas corpus. The Court will also deny a certificate of appealability. In order to obtain a certificate of appealability, a prisoner must make

a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2).  To

demonstrate this denial, the applicant is required to show that reasonable jurists could debate

whether, or agree that, the petition should have been resolved in a different manner, or that the

issues presented were adequate to deserve encouragement to proceed further. *Slack v. McDaniel*,

529 U.S. 473, 483-84 (2000).  When a district court rejects a habeas petitioner's constitutional

claims on the merits, the petitioner must demonstrate that reasonable jurists would find the

district court's assessment of the constitutional claims to be debatable or wrong. *Id.* at 484.

Likewise, when a district court denies a habeas petition on procedural grounds without reaching

the prisoner's underlying constitutional claims, a certificate of appealability should issue, and an

appeal of the district court's order may be taken, if the petitioner shows that jurists of reason

would find it debatable whether the petitioner states a valid claim of the denial of a

constitutional right, and that jurists of reason would find it debatable whether the district court

was correct in its procedural ruling. *Id.* at 484.  "The district court must issue or deny a

certificate of appealability when it enters a final order adverse to the applicant." Rules

Governing § 2254 Cases, Rule 11(a), 28 U.S.C. foll. § 2254.

    For the reasons stated in this opinion, the Court will deny petitioner a certificate of

appealability because reasonable jurists would not find this Court's assessment of petitioner's

claims to be debatable or wrong. *Johnson v. Smith*, 219 F. Supp. 2d at 885.  The Court will also

deny petitioner leave to appeal *in forma pauperis*, because the appeal would be frivolous. *Allen

v. Stovall*, 156 F. Supp. 2d 791, 798 (E.D. Mich. 2001).

## IV. CONCLUSION

    Accordingly, the Court **DENIES WITH PREJUDICE** the petition for a writ of habeas

corpus.  The Court further **DENIES** a certificate of appealability and leave to appeal *in forma pauperis*.

**SO ORDERED.**

_____

PAUL D. BORMAN
UNITED STATES DISTRICT COURT

DATED: 2/6/13